UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CARLOS VASQUEZ GARCIA,<br><br>      Petitioner,<br><br>  v.<br><br>JULIO HERNANDEZ et al.,<br><br>      Respondents. | CASE NO. 2:26-cv-01202-DGE<br><br>ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) |

Before the Court is Petitioner's petition for writ of habeas corpus. (Dkt. No. 1.) For the reasons discussed herein, the petition is GRANTED.

## I. BACKGROUND

### A. Factual Background

Petitioner is a citizen of Mexico. (Dkt. Nos. 1 at 1; 2 at 2.) On March 18, 2024, Petitioner entered the United States near the port of entry in Nogales, Arizona, where Customs and Border Patrol ("CBP") took him into custody and transported him for processing. (Dkt. Nos. 2 at 8; 6 at 2.) On March 19, 2024, Petitioner was issued an Order of Release on Recognizance

("OREC").  (Dkt. No. 2 at 12.)  Petitioner's OREC identifies Petitioner was released "[i]n accordance with section 236 of the [Immigration and Nationality Act ("INA")] and the applicable provisions of Title 8 of the Code of Federal Regulations[.]"[1]  (*Id.*)  Also on March 19, Petitioner was served with a Notice to Appear ("NTA") which alleged Petitioner was inadmissible pursuant to INA section 212(a)(6)(A)(i).  (Dkt. No. 2 at 8.)

Petitioner is married and has a minor child, both of whom are also in removal proceedings.  (*Id*. at 3.)  Petitioner resides with and cares for his minor child, who is enrolled in school.  (*Id.*)  Since his release, Petitioner has established "significant ties" to his community in Pasco, Washington, where he maintains a close network of friends.  (*Id.*)  Petitioner asserts he has complied with the conditions of his release and has attended all required appointments scheduled by the Department of Homeland Security ("DHS").  (*Id*.)  Petitioner has no known criminal convictions.  (*Id*.)

On or about September 23, 2025, Petitioner filed an Application for Asylum and Withholding of Removal under the Convention Against Torture with the Seattle Immigration Court.  (Dkt. Nos. 1 at 6; 2 at 2.)  Petitioner's asylum claim is based on having suffered harm "in the forms of kidnapping, torture, threats of death, and others" at the hands of an organized crime group in Mexico.  (Dkt. No. 2 at 3.)  On April 7, 2026, Petitioner appeared for a hearing in the Seattle Immigration Court.  (*Id*. at 2, 17.)  Petitioner testified that day in support of his asylum application.  (Dkt. No. 15 at 3.)  After counsel for the government cross-examined Petitioner, counsel made closing arguments without providing Petitioner's counsel the opportunity to conduct redirect examination of Petitioner or offer closing arguments.  (Dkt. Nos. 1 at 6; 15 at 4.)  The hearing then was continued to May 8, 2026.  (Dkt. Nos. 1 at 6; 2 at 17.)

---

[1] Section 236 of the INA is codified at 8 U.S.C. § 1226.

ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 2

The only individuals present at the April 7, 2026 hearing were the immigration judge, the court clerk, an interpreter, the government's attorney, Petitioner's spouse, Petitioner's counsel, and Petitioner's counsel's three employees. (Dkt. No. 15 at 2.)  The hearing began at approximately 8:30 a.m. (Dkt. No. 2 at 14.)

DHS, through an Enforcement and Removal Operations ("ERO") officer, issued an administrative warrant at 11:51 a.m. (Dkt. No. 7-4 at 2.)  The warrant was issued after "ERO Seattle received information indicating that [Petitioner] has provided sworn testimony in immigration court, during which he admitted" to engaging in significant criminal conduct. (Dkt. No. 11 at 3.)  In addition, DHS identified Petitioner had allegedly violated conditions of his prior release. (*Id.*)  By 12:00 p.m., an arrest team arrived at the Seattle Immigration Court to arrest Petitioner. (*Id.*)  The hearing ended at approximately 1:00 p.m., at which time the arrest team detained Petitioner upon exiting the courtroom. (*Id.*)  "[A]pproximately eight masked and armed individuals, who did not identify themselves, approached Petitioner." (Dkt. No. 2 at 4.)  Petitioner was placed in handcuffs and escorted to an elevator. (*Id.*)  The arrest team did not respond to Petitioner's counsel's request for information about the basis for Petitioner's arrest. (*Id.*)  The arrest team did not provide Petitioner with any pre-deprivation notice or any opportunity to be heard regarding his arrest. (*Id.*)  After detaining Petitioner, DHS administratively cancelled Petitioner's OREC and issued a Notice of Custody Determination. [2] (Dkt. Nos. 7-5; 7-6.)

---

[2] Petitioner cites a recent letter from the Department of Justice to a United States District Judge in the Southern District of New York in which the DOJ admits ICE relied upon erroneous information when detaining individuals at or near immigration courts. *African Communities Together v. Lyons*, 1:25-cv-06366-PKC, Dkt. No. 77 (S.D.N.Y. March 24, 2026).  Petitioner notes he was detained at his immigration hearing several weeks after the Government publicly acknowledged that current ICE policy does not justify arrests at immigration courthouses.

**B. Procedural History**

Petitioner filed a petition for a writ of habeas corpus on April 8, 2026.  (Dkt. No. 1.)  Petitioner asserts his detention violates the Due Process Clause of the Fifth Amendment and seeks immediate release.  (*Id.* at 15.)  Petitioner also requests leave to file a motion for attorney fees and costs.[3]  (*Id.* at 16.)  Pursuant to the Court's standard scheduling order, Respondents filed a response on April 23, 2025.  (Dkt. No. 5.)  On April 28, 2026, Petitioner filed a traverse.  (Dkt. No. 14, 17.)

## II.   ANALYSIS

**A. Legal Standard**

A writ of habeas corpus is "available to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl. 2).  To succeed on his habeas petition, Petitioner "must show [he] is in custody in violation of the Constitution or laws or treaties of the United States."  *Doe v. Bostock*, No. C24-0326-JLR-SKV, 2024 WL 3291033, at *5 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, No. C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (citing 28 U.S.C. § 2241).

---

[3] Petitioner also asks the Court to take judicial notice of: (1) the aforementioned DOJ letter; and (2) "the number of re-detention cases where the judges in this district have granted habeas corpus petitions finding that re-detention requires procedural safeguards pursuant to the Due Process clause." (Dkt. No. 1 at 13–14.)  Federal Rule of Evidence 201(b) provides that a "court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  The Court finds it appropriate to take judicial notice of the DOJ letter, which is publicly available on the Southern District of New York's docket.  With respect to the number of habeas cases in which judges in this district have granted relief based on due process considerations, the Court is unaware of the precise figure.  However, the Court has been overwhelmed with habeas corpus petitions in recent months and acknowledges the number of such cases is significant.  Petitioner refers to a publicly available website which indicates there are currently 741 active habeas corpus actions in the Western District of Washington.  *See* https://habeasdockets.org/dockets/court/wawd/ (last accessed May 4, 2026).

ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 4

Because habeas proceedings are civil in nature, the "[p]etitioner 'bears the burden of proving that he is being held contrary to law, . . . [and] he must satisfy his burden of proof by a preponderance of the evidence.'" *Aditya W. H. v. Trump*, No. 25-cv-1976, 2025 WL 1420131, at *7 (D. Minn. May 14, 2025) (quoting *Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted)).

**B.  The record does not establish Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c)**

Respondents argue "the primary and controlling authority" for Petitioner's detention is 8 U.S.C. § 1226(c)(1)(A).  (Dkt. No. 5 at 5.)  § 1226(c) "carves out a class of aliens for whom detention is mandatory." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022). Under § 1226(c), "[t]he Attorney General shall take into custody any alien who" is removable from this country because he has been convicted of, or has admitted committing, one of a specified set of crimes enumerated in 8 U.S.C. § 1182(a)(2). *Demore v. Kim*, 538 U.S. 510, 513, (2003).  Among these are certain "crimes involving moral turpitude" as defined by statute, controlled substance offenses, aggravated felonies, firearm offenses, and terrorist activities.  *Doe v. Decker*, Case No. 21 Civ. 5257 (LGS), 2021 WL 5112624 at *1 (S.D.N.Y. Nov. 3, 2021).

Respondents argue Petitioner is subject to mandatory detention under § 1226(c) because during his April 7, 2026 testimony in immigration court, Petitioner admitted to "participating in grave criminal activity" in Mexico that "map[s] directly onto crimes involving moral turpitude, aggravated felonies, controlled substance offenses, and firearms violations."  (Dkt. No. 5 at 2, 6.) Petitioner contends Respondents have not submitted sufficient proof of an admission to criminal conduct to trigger mandatory detention under § 1226(c).  (Dkt. No. 17 at 5–7.)

To be subject to mandatory detention, a noncitizen must "admit[]" to "having committed" such conduct, or admit to "committing acts which constitute the essential elements" of such

ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 5

crimes.  8 U.S.C. § 1182(a)(2)(i).  Three requirements must be met for an admission under § 1182(a)(2)(i) to qualify as having been validly obtained:

> First, the admitted conduct must constitute the essential elements of a crime in the jurisdiction where it occurred.  Second, the applicant for admission must have been provided with the definition and essential elements of the crime prior to his admission.  Third, his admission must have been voluntary.

*Pazcoguin v. Radcliffe*, 292 F.3d 1209, 1215–1216 (9th Cir. 2002).  Respondents offer no evidence to support a finding that these requirements were met.

Here, absent from the record is any hearing transcript indicating Petitioner was informed of the definition and essential elements of any alleged crimes Respondents now claim Petitioner admitted he committed.  At most, Respondents offer a declaration from a removal officer who states in conclusory fashion that Petitioner testified to "participating" in criminal conduct.  (Dkt. No. 10 at 3.)  But this removal officer was not present at the April 7 hearing and, therefore, lacks foundation to identify the testimony Petitioner provided.  Similarly, Petitioner's Form I-213, "Record of Deportable/Inadmissible Alien," contains nothing more than conclusory statements about Petitioner's testimony and is insufficient to establish the requirements for an admission under § 1182.

It also is not lost on this Court that counsel representing the government at the April 7 hearing, and who was present for the entirety of Petitioner's testimony that day, did not immediately ask the immigration judge to cancel Petitioner's release order and take Petitioner into custody.  The immigration judge, who received Petitioner's testimony, undeniably had the ability to consider, evaluate, and determine whether Petitioner's testimony triggered § 1226(c).  The government's counsel determined, for whatever reason, on April 7 that Petitioner's testimony did not merit an immediate need to ask the immigration judge to take Petitioner into

custody.  There also is no indication that the government's counsel ever sought to amend the NTA to include Petitioner's alleged criminal conduct as a basis for removability.  At present, the only charge of removability remains INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), which pertains to a noncitizen being present without having been admitted or paroled, not criminal conduct.  (*See* Dkt. No. 2 at 8.)

Accordingly, the record does not support Respondents' contention that Petitioner is subject to mandatory detention under § 1226(c).  Therefore, the Court finds and concludes § 1226(c) is inapplicable and otherwise does not support Petitioner's continued detention.

### C.  Petitioner is not subject to 8 U.S.C. § 1225.

Alternatively, Respondents argue Petitioner's re-detention was authorized and required under 8 U.S.C. § 1225(b)(2)(A).  (Dkt. No. 5 at 6–7.)  § 1225 applies to "applicants for admission" to the United States, who are defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States . . . ."  8 U.S.C. § 1225(a)(1).  Applicants for admission fall into two categories, both of which are subject to mandatory detention.[4]  *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).  Individuals detained under § 1225 can only be paroled into the United States "for urgent humanitarian reasons or significant public benefit."  *Id.* at 300 (quoting 8 U.S.C. § 1182(d)(5)(A)).  In contrast, 8 U.S.C. § 1226(a) is broader than its counterpart and is the "default rule" for noncitizens present in the United States who are arrested and placed in immigration detention.  *Jennings*, 583 U.S. at 303.  § 1226(a)

---

[4] § 1225(b)(1) applies to individuals initially determined to be inadmissible due to fraud, misrepresentation, or a lack of valid documentation.  § 1225(b)(2) "serves as a catchall provision that applies to all applicants for admission not covered by" § 1225(b)(1).  *Jennings*, 583 U.S. at 287.

permits the government to release a detainee on bond during the pendency of the detainee's removal proceedings. *Id.*

Here, the Court record does not support the conclusion that Petitioner is subject to detention under § 1225. First, Petitioner was not paroled into the United States under § 1225 as there is no indication he was allowed to enter based on urgent humanitarian reasons or for a significant public benefit.[5] Instead, when Petitioner was first apprehended in March 2024, he was subsequently released on an order of recognizance "[i]n accordance with section 236 of the [INA] and the applicable provisions of Title 8 of the Code of Federal Regulations." (Dkt. No. 2 at 12.) An order of recognizance is issued when a detainee is released pursuant to § 1226. *See Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007) ("It is apparent that the INS used the phrase 'release on recognizance' as another name for 'conditional parole' under § 1226(a).").

Second, Petitioner's NTA does not designate Petitioner as an "arriving alien" (Dkt. No. 2 at 8), which is the active language used to define the scope of § 1225(b)(2)(a) in its implementing regulation. *See* 8 C.F.R. § 235.3(c)(1) ("Except as otherwise provided in this chapter, any *arriving alien* who appears to the inspecting officer to be inadmissible, and who is placed in removal proceedings pursuant to [§ 1229a] shall be detained in accordance with [§ 1225(b)].") (emphasis added); *see also Martinez v. Hyde*, 792 F. Supp. 3d 211, 218 (D. Mass. 2025) (concluding "arriving alien" language synonymous with § 1225).

---

[5] Moreover, parole for humanitarian reasons is terminated only after the Secretary of Homeland Security has determined the purposes of such parole have been served. *See* 8 U.S.C. § 1182(d)(5)(A). Nothing in the record identifies such a determination was made at the time Petitioner was detained on April 7.

ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 8

In addition, § 1225 and § 1226 cannot be applied simultaneously, and the "procedural protections thereunder . . . cannot be unilaterally abrogated without process by the Government simply 'switching tracks.'" *Salcedo Aceros v. Kaiser*, Case No. 25-cv-06924-EMC (EMC), 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (citation omitted); *Gutierrez v. Chestnut*, Case No. 1:25-cv-01515-DAD-AC (HC), 2025 WL 3514495, at *5 (E.D. Cal. Dec. 8, 2025) ("As numerous courts have observed, the initial decision to pursue petitioner's detention under § 1226(a) precludes the government from later 'switch[ing] tracks' to subject him to mandatory detention under § 1225(b)(2)."); *Uzcatequi v. Brooksby*, Case No. 4:26-cv-00020-DN-PK, 2026 WL 622751, at *9 (D. Utah Mar. 5, 2026).  Respondents offer no authority supporting the power to unilaterally swap without process the statutory basis for releasing a noncitizen midway through pending removal proceedings.

Accordingly, the Court finds Petitioner is not subject to 8 U.S.C. § 1225.

**D.  Petitioner's re-detention violated due process.**

The Due Process Clause protects against deprivation of liberty without proper process, and this protection extends to deportation proceedings.  U.S. CONST. amend. V. ("No person shall be . . . deprived of life, liberty, or property, without due process of law[.]"); *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings.").

The traditional test for evaluating due process claims set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), "can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).  "The fundamental requirement of due process is the opportunity to be heard 'at a

meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). *Mathews* employs a three-factor test looking at (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest." *Mathews*, 424 U.S. at 335.

### 1. Private Interest

The first *Mathews* factor considers "the private interest that will be affected by the official action." *Id.* Federal courts have continually recognized an immigration detainee's private interest in freedom from imprisonment. *See Hamdi*, 542 U.S. at 529 (finding freedom from detention "the most elemental" of private interests); *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025). An individual who was initially released from immigration custody is deprived of this private interest in freedom from imprisonment upon a renewed detention. *See Makuey v. Scott*, Case No. 2:25-cv-02135-DGE-BAT, 2025 WL 3640900, at *4 (W.D. Wash. Dec. 16, 2025) (finding Petitioner "has now been undeniably deprived of [his interest in liberty] because he was arrested, transferred to the NWIPC, and remains detained today" following an earlier release).

Here, Petitioner was taken into custody in March 2024 and released on his own recognizance shortly thereafter. At that point, he "took with him a liberty interest which is entitled to the full protections of the [D]ue [P]rocess [C]lause." *Ramirez Tesara v. Wamsley*, No. 2:25-CV-01723-MJP-TLF, 2025 WL 2637663, at *3 (W.D. Wash. Sept. 12, 2025); *Makuey*,

ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 10

2025 WL 3640900, at *4.  Petitioner was then at liberty in the community for nearly two years, during which time he integrated into his community and provided support for his minor child. "[I]ndividuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty." *Doe*, 787 F. Supp. 3d at 1093.  The first *Mathews* factor thus favors Petitioner.

2.    Risk of erroneous deprivation of interest through procedures used

Respondents argue the risk of erroneous deprivation is minimal because Petitioner's detention was based on Petitioner's "own sworn, in-court admissions" to various offenses.  (Dkt. No. 5 at 10.)  Respondents also argue Petitioner was provided notice and an opportunity for immigration judge review, which he declined.  (*Id.*)

For the reasons already stated, *see* Section II(B) *supra*, absent from the record is evidence establishing Petitioner admitted he committed criminal conduct.  Thus, to the extent Petitioner's alleged criminal conduct was the primary basis for detaining Petitioner, there clearly exists a significant risk of erroneous deprivation.

To the extent Respondents assert Petitioner's ATD violations were the basis for his re-detention, these alleged violations cannot serve as a basis for re-detaining Petitioner without pre-deprivation notice and an opportunity to be heard.  Other courts have rejected the argument that Respondents can re-detain those released for "purely technical violations, like being late to a check-in," without regard as to whether that technical violation means the person is a flight risk or danger.  *Vilela v. Robbins*, Case No. 1:25-cv-01393-KES-HBK (HC), 2025 WL 3101334, at *4 (E.D. Cal. Nov. 6, 2025) (citation and alterations omitted) (collecting cases); *see also Palacios v. Hermosillo*, Case No.2:26-cv-00491-JNW, 2026 WL 686138, at *7 (W.D. Wash. Mar. 11, 2026) (noting that factual disputes concerning whether an individual complied with the

terms of an ATD program "should be resolved at a pre-deprivation hearing, rather than resolved after the fact" by a court) (citation omitted).

As for Respondents' argument that Petitioner declined review by an immigration judge *after* his re-detention, an offer of a post-deprivation hearing does not cure the violation of Petitioner's due process rights. A "post-deprivation hearing cannot serve as an adequate procedural safeguard because [it occurs] after the fact and [thus] cannot prevent an erroneous deprivation of liberty." *E.A.T.-B. v. Wamsley*, Case No. C25-1192-KKE, 2025 WL 2402130, at *5 (W.D. Wash. Aug. 19, 2025.) And although "there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate," *Guillermo M.R. v. Kaiser*, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025) (citing *Zinermon v. Burch*, 494 U.S. 113, 128 (1990)), Respondents fail to offer evidence indicating such circumstances exist in this case.

Accordingly, the second *Mathews* factor favors Petitioner.

### 3. Government's Interest

The third *Mathews* factor contemplates "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. Respondents have an interest in ensuring a noncitizen appears at future immigration proceedings and that a noncitizen does not pose a danger to the community. *Zadvydas*, 533 U.S. at 690.

Respondents argue the Government's interests in this case are compelling: ensuring Petitioner's presence at his May 8, 2026 hearing and "protecting the public from an individual who has admitted to extraordinarily violent criminal conduct." (Dkt. No. 5 at 11.) But once more, Respondents fail to provide evidence supporting their contention that Petitioner admitted

ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 12

to committing criminal conduct.  Conclusory statements offered by individuals who were not present at the April 7 hearing are not evidence.

The administrative burden of holding a pre-deprivation hearing would have been minimal, given that government counsel could have sought such a hearing immediately in front of the immigration judge who received Petitioner's testimony.  The third *Mathews* factor weighs in favor of Petitioner.

Accordingly, even though requiring pre-detention process in this case would present some degree of administrative burden to Respondents, given the high risk of erroneous deprivation and the fundamental liberty interest at stake, providing effectively no pre-detention process was constitutionally deficient.

### III.    ORDER

Petitioner's petition for writ of habeas corpus (Dkt. No. 1) is GRANTED.  Respondents and all their officers, agents, attorneys, and persons acting on their behalf or in concert with them SHALL release Petitioner from custody within ONE day of this order and return him to the conditions of release identified in his order of release on recognizance (*see* Dkt. No. 2 at 12.).

Petitioner SHALL not be re-detained, absent urgent circumstances or a clear legal basis for detention, without first providing pre-deprivation notice and an opportunity to be heard in front of an immigration judge.[6]  The record Respondents presented in this matter fails to establish urgent circumstances or a clear legal basis justifying re-detention without a pre-deprivation hearing.

---

[6] In the event Petitioner is re-detained in the future and Petitioner challenges such detention, Petitioner shall file a new habeas petition outlining the basis for relief.  The Court considers a new detention as being based on new facts for which a new habeas petition should be filed.

ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 13

Within **TWENTY-FOUR (24)** hours of this order, Respondents SHALL provide the Court with a declaration confirming Petitioner has been released from custody.

Petitioner requested attorney fees and costs under the Equal Access to Justice Act ("EAJA").  *See* 28 U.S.C. § 2412(d)(1)(A).  To be eligible for fees under the EAJA, a petitioner must submit an application within thirty days of *final* judgment.  *See id.* § 2412(d)(1)(B).  Accordingly, Petitioner may file a motion supporting such request no later than **August 4, 2026.**

Dated this 6th day of May, 2026.

David G. Estudillo
United States District Judge

ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 14